## 5992. HORSELY v. THE STATE.

1. The words "cultivated land," in section 217 of the Penal Code of 1910, are not intended to apply exclusively to land with growing crops upon it. If the land is actually prepared for a crop, or if it has been used for growing crops and the owner intends to devote it again, in due season, to such use, a trespass upon it may be punished under this section.
2. A tenant is entitled to undisturbed enjoyment of his possession, and the landlord has no right to determine who shall be his guests, or to determine the time of their visits, so long as they do not infringe upon any right of the landlord, and are there on a lawful mission. Nevertheless, such visitors may not trespass upon cultivated lands in going to and from a house occupied by a tenant, but must confine themselves to the usual and proper means of approach and departure.
3. The evidence authorized the verdict, and there is no substantial merit in any of the exceptions to the charge of the court.

DECIDED MARCH 18, 1915.

Accusation of trespass; from city court of Madison—Judge Anderson. August 5, 1914.

*Middlebrooks & Burruss,* for plaintiff in error.

*A. G. Foster, solicitor,* contra.

WADE, J. King Horsely was convicted of a violation of section 217 of the Penal Code, which is as follows: "If any person shall willfully enter, go upon, or pass over any field, orchard, garden, or other inclosed or cultivated land of another, after being personally forbidden so to do by the owner or person entitled to the possession for the time being, or authorized agent thereof, he shall be guilty of a misdemeanor. The evidence was in substance as follows: J. A. Nolan, the prosecutor, testified, that he owned and operated a farm known as the "J. W. Richardson Jr. place," in Harris district, Morgan county, Georgia; that the title to this land was in him and he cultivated the land in the year 1913, and during the summer of 1913 he forbade the defendant from going on this land; that after he forbade him from going there, he saw the defendant on that place during the fall of 1913; that he saw the defendant going through the pasture with a gun on his shoulder; that the defendant came out of a house on the place, and, in going to the pasture, passed over a little strip of land between the house and the pasture, on which had been planted during the year a crop of cotton, which was abandoned; that the defendant did not live on that place or on any other place belonging to the prosecutor, and his wife did not live there; she had lived there, but moved away dur-

ing the preceding summer, and her mother lived in the house where the witness saw him; that the strip of. land he crossed was about 150 feet wide, and there was no path or passage over it going towards the pasture; that Bermuda grass took possession of this strip, and for that reason the crop was abandoned for the year; that the witness had planted in cotton the land that he saw the defendant go upon and across, and he intended to plant that particular strip in cotton during the following year, and did plant it in cotton.  Van Jackson testified, that he was working as a cropper with the prosecutor on the "J. W. Richardson Jr. place," and lived in a house thereon; that the defendant came to this house in November, 1913, coming down the road, and when he went away he "left across the field," that "cotton was planted there in the field," —referring to the strip of cultivated land which Nolan testified the defendant crossed; that the defendant "came down the road, and when he got ready to leave he went across the field; cotton had been planted there, but Mr. Nolan didn't get some of it worked; there was too much cotton in the field;" that he (the witness) was in the yard when the defendant left, and had been talking pleasantly with him, as he "had nothing against him;" that there was no path where the defendant walked across this strip of land to the pasture; that the defendant's wife was not at this house, though her mother was; that the defendant remained a considerable time, talking to him, and finally saluted him and walked off; that.the defendant came there "and spoke to his mother-in-law and walked away."  The defendant denied that the prosecutor had personally forbidden his going on the land, and said, in explanation of his visit there, that his wife was living on Mr. Nolan's place, and had started a crop there, and she was staying with Jackson; that he started over there with no intention of interfering, as his wife told him she wanted to move away; "then Mr. Nolan forbade him to go over there;" that the day Mr. Nolan saw him there he went across the pasture; his wife "had slipped off over there, and we were all standing around talking," and Jackson told him to go away, as they did not want any trouble, and he went, but did not cross any garden or pasture.

1.  In the motion for a new trial it is contended that the court erred in the following charge to the jury: "If he personally notified the defendant not to go upon his lands, then you go further

and see if he did go upon the cultivated lands. If he did not personally notify or forbid the defendant from going upon his field, then he would not be guilty; but if he had notified him personally not to go upon his premises or upon his land, and he afterwards went upon the cultivated lands of the prosecutor, as alleged in the indictment, then he would be guilty." It is insisted that there was no evidence to support this instruction, and that it was misleading and confusing to the jury and prejudicial to the defendant, in that the jury was led to believe from it that if he went on the "premises" or "land" of Nolan, after having been personally notified not to do so, he would be guilty, regardless of whether the ingress or egress was over a plantation road or over cultivated lands. We do not think the instruction is subject to the exception, and certainly there was evidence to warrant it. The prosecutor testified that during the previous summer he forbade the defendant from going on the "J. W. Richardson Jr. place," and the judge carefully guarded all the rights of the defendant by instructing the jury that should they find that the prosecutor had notified the defendant not to go upon his lands, they should "go further and see if he did go upon the *cultivated lands.*" And further, the court instructed the jury that if the owner notified the defendant personally "not" to go upon his land or premises, "and he [the defendant] afterwards went upon the cultivated lands of the prosecutor, as alleged in the indictment, then he would be guilty." A jury of ordinary intelligence could not have been misled by this plain and clear instruction that the defendant *would not* be guilty, unless the proof showed that after being forbidden to go upon the lands or premises of the prosecutor, he went upon the "cultivated lands." This charge did not authorize the jury to convict the defendant if they found that he entered or left the place over a plantation road or over uncultivated lands.

In the next ground of the motion for a new trial it is contended that the court erred in the following charge to the jury: " 'Cultivated lands' does not mean lands upon which there are growing crops all the year round, but means lands that have grown crops on them from year to year—crops for this year for instance; and if at the end of the year there are no crops planted for another year, and the land is used generally for cultivating purposes, then under the laws of this State it would be considered cultivated

land." It is insisted that the question whether the lands were cultivated, and the question whether there was enough to put the defendant on notice that the lands he walked across were really cultivated, were matters for determination by the jury, and that the court thereby took away from the jury the determination of these questions; and it is further contended that there was no evidence to authorize this charge. In *Bryce* v. *State,* 113 *Ga.* 705 (39 S. E. 892), the Supreme Court said: "The words 'cultivated lands' in this section [referring to section 220 of the Penal Code of 1895, which is section 217 of the Penal Code of 1910] are not intended to apply to such land only as at the time has growing crops upon it. If it is actually prepared for a crop, or if it has been used for growing crops and the owner intends to again devote it, in due season, to such use, a trespass upon it may be punished under this section." The prosecutor testified, that when Horsely crossed the strip of land which the State contends was "cultivated," there was an abandoned crop of cotton thereon which had been planted that year; that he had planted in cotton that part of the place that he saw "King Horsely on;" and that he "intended to plant that part of the place in cotton this year [the year following], and did plant it in cotton." Under the test laid down in *Bryce* v. *State,* supra, the strip of land on which a cotton crop had been planted that year, even though the crop had been abandoned for the year on account of grass, and upon which the owner intended to plant and did plant a cotton crop the following year, was plainly "cultivated land," a trespass upon which might be punished under section 217. There was absolutely no testimony and nothing in the defendant's statement that contradicted the testimony to the effect that a cotton crop had been planted on this strip of land during the year 1913, and another crop planted thereon in 1914; and since, under the ruling in the *Bryce* case, supra, there could have been no question as to whether this strip of land was "cultivated land," within the meaning of section 217, no material error would have been committed even if the court had instructed the jury that the particular lands in question were in legal effect "cultivated lands." We do not think, however, that the judge went far enough to take the question from the jury (had there been any conflict on this point), but he simply instructed them as to when, under the law, lands might be considered as cultivated lands, so that one trespassing

thereon, in defiance of a personal prohibition from the owner, would be guilty of trespass.

It is complained that the court erred in refusing to charge as follows: "If land is apparently abandoned and is not in cultivation at a time when a growing crop of some kind would be upon it if it were used for purposes of cultivation, then there would be a presumption that the land was not, under the law, 'cultivated land.'" We think the court did not err in refusing this request. There was direct evidence, undisputed, which under the decision in the *Bryce* case, supra, made the strip in question "cultivated land," within the meaning of section 217, and it was not necessary to resort to presumptions to determine the fact. The question was not to be determined either from the appearance of the land at the time or from any presumption which might arise in the mind of the defendant because of the fact that the crop planted thereon had been apparently abandoned. In the *Bryce* case, supra, the Supreme Court said: "If it has been used for growing crops and the owner intends to again devote it, in due season, to such use, a trespass upon it may be punished under this section." Ordinarily no presumption in the mind of a trespasser, as to the future purpose of the owner in regard to lands upon which there was an abandoned crop, would be authorized; and yet under the ruling in the *Bryce* case, if the land has been used previously for growing crops "and the owner again intends to devote it, in due season, to such use," one trespassing upon it might be punished. It would be impossible for the trespasser to determine, merely from the fact that the crop on certain land appeared to have been abandoned, that the owner did not again intend to use this particular land in due season for growing other crops. From this it seems that it is wholly immaterial whether land which had been used for growing crops and which the owner again intended to use in the same way was in such condition at the time a trespasser approached it as to raise in his mind a presumption that the land had not been used and would not again be used for farming purposes, and hence was not "cultivated land." When a landowner (who, even in this liberal and democratic country, has some property rights) orders a trespasser to remain off his property, and in defiance of the owner's demand he goes thereon, he acts at his peril, and should he fail to confine himself to roads and ways which he has a legal right to traverse,

the error is his and the consequences must rest upon his own head. Despite the laws intended to protect the rights of those who through thrift have acquired property, too little regard is paid to what are commonly known as the rights of property. Often the right of privacy is a man's most cherished possession, and the law should afford him protection in the enjoyment of this right, where, by commendable industry and self-denial, or perhaps through the foresight of some ancestor, he is nominally at least entitled to the free enjoyment of a small portion of the face of the earth as his own, and to the exclusion of others.

2. It is argued (though it does not appear from the record that any such excuse for the presence of the defendant actually existed) that since the defendant's wife lived on the prosecutor's place he was entitled to visit her there notwithstanding he had been forbidden by the owner to go upon the premises; and the case of *Mitchell* v. *State,* 12 *Ga. App.* 557 (77 S. E. 889), is relied upon to sustain this contention. In that case this court held, that "Where premises are rented to another, the landlord has no right, during the tenancy, to forbid a third person to go upon the rented premises for a lawful purpose with the permission of the tenant. A tenant is entitled to the undisturbed enjoyment of his possession, and the landlord has no right to exercise any control over the personnel of the tenant's guests, or in reference to the time of their visits, so long as they are upon a lawful mission and do not infringe upon any right of the landlord. Though a woman be living separate and apart from her husband, one who has rented to her a house in which she resides has no right to forbid the husband to go upon the rented premises for the purpose of visiting his wife." It appears, however, in the statement of facts, that the defendant in that case "was seen in the yard, within about ten feet of the house where his wife lived. There was a road leading from his house out to the public road, but the accused was never seen on any portion of this tract except in the yard near the house. The accused and his wife had separated some time before he was seen in the yard. The yard in which the accused was seen extended about ten or twelve feet in width around the house, and this yard was not in cultivation. The five-acre tract was cultivated land, but seems not to have been enclosed." In the decision this court said: "In the first place, it was not shown that the accused entered upon any

enclosed or cultivated land. Penal laws are strictly construed, and, where the land is not enclosed, it must appear that the accused went upon or passed over land which either was at the time actually in cultivation, or had been used for growing crops, and that the owner intended to devote it again to such use in due season." It was further said that "the accused was on an uninclosed yard which had never been in cultivation, and it was not shown that he did not reach the yard by means of the road which extended from it." It appeared also in that case that the house and yard, which the defendant visited after being forbidden by the owner to come on the premises, were in the possession of the wife of the accused, who was a tenant of the owner, and the court properly held that "one entitled to the possession of land is, for the time being, entitled to the undisturbed enjoyment of such right, regardless of who is the true owner" (citing *Wiggins* v. *State,* 119 *Ga.* 216, 46 S. E. 86), and that in the absence of a special contract, the owner has no right to forbid a person to go upon premises in the possession of his tenant, where the person does so for a lawful purpose and by the permission of the tenant. The court said further: "We are unwilling to hold that one who has rented a house to a man's wife can lawfully forbid the husband to visit her at any time when it suits their convenience." In that case, however, it did not appear that the defendant went upon or passed over any land which either was at the time in cultivation or had been used for growing crops, and which the owner intended to devote again to such a purpose; it appeared that he was in the yard surrounding a house occupied by his wife as a tenant of the owner, and the yard was not in cultivation; it did not appear that the surrounding field was rented by the wife, nor did it appear that he went over, across, or upon this cultivated field. It did affirmatively appear that the house was rented by the wife, and, as was said by the court, "this carried with it the right to use so much of the yard as was necessary for the undisturbed enjoyment of the rented premises." The evidence showed that there was a road leading directly to the house, and it may be assumed, in the absence of anything to the contrary, that he traveled the road, which, under the circumstances, he had a right to travel.

In this case the defendant's wife appears to have herself had no right on the premises; and if she had lived there previously in

illicit relations with the witness Jackson, she had removed herself to some other spot, and in fact she 'was never a tenant of the owner, and she could not properly extend to the defendant an invitation to visit the house of Jackson or permission to come upon the place, without the consent of the landlord and in the face of his notice to the defendant to stay away. Even admitting, however, for the sake of the argument, that the defendant had a right to visit his wife at the house of Jackson on the forbidden "J. W. Richardson Jr. place," under the ruling in the *Mitchell* case, supra, he would nevertheless have been guilty of a violation of section 217 if he failed to confine himself to the premises directly under the control of his wife, or the house she occupied and the yard surrounding the house. In other words, admitting that he had a right to visit the place, he must, under the ruling in the *Mitchell* case, supra, have nevertheless refrained from trespassing thereon by going over, across, or upon the cultivated lands, which Jackson swore he cultivated for Mr. Nolan that year; for certainly, under the evidence, he had no permission from Jackson to cross this strip, and Nolan prohibited his presence there.

3. The evidence amply warranted the verdict, and no error was committed by the trial judge.

*Judgment affirmed. Broyles, J., not presiding.*